**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

| | | |
|---|---|---|
| **CHRISTY FARR** | : | Case No. 1:15-cv-_____ |
| 1483 Bottomwood Drive | : | |
| Hebron, Kentucky  41048 | : | Judge _____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **AMAZON.COM.KYDC, LLC** | : | |
| 410 Terry Avenue North | : | **COMPLAINT WITH JURY** |
| Seattle, WA  98109 | : | **DEMAND ENDORSED HEREON** |
| | : | |
| Also serve its statutory agent: | : | |
| CSC-LAWYERS INCORPORATING | : | |
| SERVICE COMPANY | : | |
| 421 W. Main Street | : | |
| Frankfort, KY  40601 | : | |
| | : | |
| and | : | |
| | : | |
| **AMAZON.COM.KYDC, INC.** | : | |
| 1200 12th Avenue South | : | |
| Suite 1200 | : | |
| Seattle, WA  98144 | : | |
| | : | |
| and | : | |
| | : | |
| **AMAZON.COM, LLC** | : | |
| 410 Terry Avenue North | : | |
| Seattle, WA  98109 | : | |
| | : | |
| Also serve its statutory agent: | : | |
| CSC-LAWYERS INCORPORATING | : | |
| SERVICE COMPANY | : | |
| 421 W. Main Street | : | |
| Frankfort, KY  40601 | : | |
| | : | |
| Defendants. | : | |

1

## PARTIES

1.      Plaintiff Christy Farr ("Mrs. Farr") is a citizen and resident of the state of Kentucky.

2.      Defendants   AMAZON.COM.KYDC   INC.,   AMAZON.COM.KYDC   LLC   and AMAZON.COM, LLC (together referred to as the singular "Amazon" or "Defendant") are foreign corporate entities that own and operate huge warehouse distribution operations in Kentucky known as "fulfillment centers."   Amazon also owns and operates (or owns entities that own and operate) similarly massive fulfillment centers throughout the United States and around the World.

3.      Defendant is an employer within the meaning of federal and Kentucky law.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over Counts I, II, III and VIII and pursuant to 28 U.S.C. § 1331 because these Counts arise under the Fair Labor Standards Act ("FLSA") and the Family and Medical Leave Act ("FMLA").

5.      This Court has supplemental jurisdiction over the state law claims in Counts IV, V, VI, VII, IX and X pursuant to 28 U.S.C. § 1367 on the grounds that these Counts are so related to the federal claims over which this Court has original jurisdiction that they form the same case or controversy.

6.      This Court has personal jurisdiction over Amazon because it conducts business and employed Mrs. Farr within this district and division.

7.      Venue is proper in this division and district pursuant to 29 U.S.C. § 1391(b).  Mrs. Farr was employed in this division and district, and the conduct giving rise to her claims occurred within this division and district.

8.      In addition to the claims asserted herein, Mrs. Farr has filed a timely charge alleging age discrimination and disability discrimination with the Equal Employment Opportunity Commission ("EEOC").   However, because of the timing of Mrs. Farr's FLSA claims and their

2

applicable statute(s) of limitations, she cannot wait for a determination from the EEOC before bringing this lawsuit without the risk of being unable to recover complete damages for her losses incurred as a result of Amazon's conduct. Accordingly, Mrs. Farr will seek to amend this Complaint when the EEOC issues a notice of right to sue in connection with federal claims raised through her EEOC charge. The claims that Mrs. Farr will seek to add are based upon the same facts and circumstances as her Kentucky law age discrimination and disability discrimination claims.

## **FACTUAL BACKGROUND**

9.      Mrs. Farr began working for Amazon in late 2005 as a temporary "picker" on the warehouse floor of one of Amazon's fulfillment centers. Amazon's fulfillment centers are massive warehouses where "pickers" fill and package thousands of customer orders per day from the hundreds of thousands of different items stored on Amazon's warehouse shelves. Over the past decade, Amazon's presence in northern Kentucky has grown dramatically from one fulfillment center in 2005 to four centers today.

10.     On or about April 6, 2006, Mrs. Farr became a permanent Amazon employee.

11.     On January 1, 2007, Mrs. Farr earned a promotion to the position of Human Resources Assistant.

12.     Because of her consistently outstanding performance, on or about October 10, 2010, Mrs. Farr earned another promotion to Senior Human Resources Assistant.

13.     The HRA positions at Amazon are classified as non-exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") and Kentucky wage and hour law. (For purposes of this Complaint, the duties of Human Resources Assistant and Senior Human Resources Assistant do not differ substantially. As such, the acronym "HRA" will be used in reference to both positions.)

14.     Amazon pays its HRAs on an hourly basis.

3

15.     Ms. Farr's primary duties as an HRA were not ones that would qualify her position for any of the exemptions from the overtime requirements of the FLSA.  Her duties included large amounts of data entry into Amazon's PeopleSoft system, tracking employee attendance, new-hire on-boarding, administering employee surveys, producing scheduling reports, reviewing payroll, and other basic human resources functions such as new employee orientations and training.

16.     The HRA positions did not involve the use of discretion or independent judgment. Mrs. Farr did not have the ability to supervise, hire, or fire other employees.  She had no authority to make independent decisions on matters of significance or policies that affected the business.

17.     Mrs. Farr did not supervise any employees and did not have any subordinate employees to whom she could or did delegate work.  Mrs. Farr reported to a Human Resources Business Partner, to whom she referred matters that involved discretion and independent judgment.

18.     Mrs. Farr was not permitted to make any significant personnel decisions.  She did not have the authority to promote employees, determine their pay rates or benefits or give raises or bonuses.

19.     Mrs. Farr did not have the authority to decide whether or not an employee should be disciplined for an infraction or what the discipline would be.  Disciplinary decisions were made by Mrs. Farr's supervisors and/or were dictated by company policies.  Mrs. Farr did not have the authority to change or alter company rules or policies, or how those policies were applied to any Amazon employee or temporary service employee.

20.     The pace of work at Amazon's Northern Kentucky fulfillment centers was extremely frenetic, with temporary and permanent employees moving through a rapidly revolving door of hiring and firing.  This was, at least in part, due to Amazon's incredible growth and extremely high employee turnover in low wage, physically demanding jobs.  As a result, Mrs. Farr's workload was constantly heavy, requiring her to work overtime on a regular basis.

4

21.     In an effort to keep labor costs low, Amazon's management discouraged Mrs. Farr from working significant amounts of overtime.  Amazon management did not, however, discourage Mrs. Farr from working "off the clock" on a regular basis in order to keep up with the constant demands of her job.  To the contrary, Amazon took steps to create an environment that encouraged off-the-clock overtime work.

22.     HRAs, like other hourly Amazon employees, clocked in and out by swiping a security badge at a station in the warehouse; and this is how Amazon tracked their compensable work time.

23.     Amazon encouraged Mrs. Farr to work off the clock in a number of ways, and Mrs. Farr did so.  Specifically, Mrs. Farr's superiors at Amazon told her that she should try to keep her recorded working time at 45 hours per week or less.  However, not long after Mrs. Farr became an HRA, Amazon issued to her a Virtual Private Network device ("VPN") and a laptop computer.  This VPN and laptop allowed Mrs. Farr to securely access Amazon's computer network from remote locations so that she could work while at home.  Amazon instructed Mrs. Farr that the VPN and laptop should remain in her possession so that she could work while not in the office, in the event of bad weather or when she was traveling to other Amazon facilities.  The time that Mrs. Farr spent using the VPN device to work at home was not recorded on Amazon's timekeeping system; and Amazon did not compensate her for it.

24.     Throughout her tenure as an HRA – from approximately January of 2007 through Amazon's termination her employment on December 30, 2014 – Mrs. Farr worked an average of approximately five hours per week from home.  (During some weeks, Mrs. Farr spent far more than five hours working from home, while she may have worked less during other weeks.  Five hours is a conservative estimate).  Members of Amazon management were aware that Mrs. Farr worked from home; and they also were aware that Amazon did not compensate her for that working time.

25.     Mrs. Farr also worked through her half-hour lunch break nearly every day of her tenure as an HRA, and was not compensated for that time.  For a significant portion of the time Mrs. Farr worked as an HRA, Amazon used a timekeeping system called "ATS" that automatically clocked out hourly employees for a 30-minute meal break during their shift.  Because of the demands of her job, however, Mrs. Farr was (other than on a small minority of occasions) never relieved of her duties during these "meal breaks."  Rather, Mrs. Farr almost always continued to work through her meal breaks while at the same time eating at her desk.  When Amazon replaced the ATS system with the KRONOS timekeeping system, Mrs. Farr made a practice of swiping her badge to clock out for meal breaks, going back to her desk to continue working, and then swiping back in 30 minutes later so that her unpaid meal break would be recorded.  Mrs. Farr's superiors were aware that this was her regular practice during meal breaks, and made Mrs. Farr feel that this was what was necessary to get the work done while keeping paid overtime low.

26.     Between her work away from Amazon's facilities (described in paragraph 24) and the meal breaks she could not take (described in paragraph 25), Mrs. Farr worked an average of approximately 7 to 7.5 overtime hours per week for which she received no compensation.  This was the case from January of 2007 through her termination on December 30, 2014.

27.     Throughout her employment at Amazon, Mrs. Farr was a loyal, dedicated and productive employee.  She received consistently favorable performance reviews and regular raises. Further, up until the day it fired her, Amazon never once found occasion to issue Mrs. Farr any form of discipline.  Mrs. Farr was, by any measure, a model employee who regularly placed the company's interests ahead of her own.

28.     In approximately March of 2013, Mrs. Farr began experiencing serious health problems, including severe headaches, hypertension, insomnia and kidney stones.  After a range of tests, Mrs. Farr's neurologist discovered that she had suffered two strokes, and had a serious and

sometimes debilitating condition knowns as cervico-occipital neuralgia ("CON") – a disorder that stems from damage to the nerves running from the top of the spinal cord up through the head.  To deal with the symptoms that resulted from the strokes and her CON, Mrs. Farr underwent treatment at a pain clinic that involved injecting a pain killer through the back of her head and into a specific nerve.  These treatments proved helpful, but would render Mrs. Farr incapacitated for the remainder of the day on which she had them.

29.     In connection with her strokes and related treatments, Mrs. Farr's doctor placed her on a 40-hour per week restriction; and Mrs. Farr applied and was approved for intermittent FMLA leave so that she could leave work if her severe headaches flared up.

30.     When Mrs. Farr reported her restriction and intermittent FMLA leave to her then supervisor, Kelly Morgan, Ms. Morgan became annoyed and retaliated against her by moving her from first shift to second shift (3:00 p.m. to 11:30 p.m.), which was far less desirable and more physically stressful.  Ms. Morgan replaced Mrs. Farr on the day shift with an HRA in her early 20s who had no previous human resources experience, did not have health issues and did not need intermittent FMLA leave.

31.     Clearly, Ms. Morgan's decision was not made because of some business necessity; because, despite her medical restrictions, Mrs. Farr continued to work off the clock overtime on second shift, by both working through her lunch and working from home with her VPN.

32.     After several months of second shift work under Ms. Morgan, Mrs. Farr obtained a transfer to an open HRA position on first shift in a different warehouse, where her supervisor became Bridget Rolfes.

33.     Under Ms. Rolfes, Mrs. Farr continued to perform her job extremely well; and she continued to work off the clock overtime.  Ms. Rolfes was fully aware that Mrs. Farr regularly worked through her lunches and worked off the clock from home.

34.     Mrs. Farr enjoyed a good working relationship with Ms. Rolfes until late June of 2014, when Mrs. Farr began suffering from acute abdominal pain and a range of other debilitating symptoms.  Mrs. Farr's physicians diagnosed the problem as pancreatitis, and placed her on 14 days of FMLA covered medical leave until July 14, 2014.  When Mrs. Farr reported to Ms. Rolfes that her doctors required her to be off work longer than she had originally expected, Ms. Rolfes became angry and spoke to her as if she were somehow being dishonest.  From that point on, Ms. Rolfes became cold, distant and unfriendly toward Mrs. Farr.

35.     On or about July 14, 2014, Mrs. Farr returned to work from her bout with pancreatitis; but she continued to experience symptoms that suggested her health problems had not fully resolved. She resumed working long hours at Amazon until on or about September 5, 2014 when her pain became so great that she had to be hospitalized.  Her physicians determined that her condition was so severe that she required a major surgery that involved the removal of her gall bladder and appendix. In connection with the surgery, and her recovery from it, Mrs. Farr required more than seven weeks of FMLA leave.  As with her return from FMLA leave in July, when Mrs. Farr returned to work on or about October 17th, 2014, Ms. Rolfes was curt and unfriendly toward her.

36.     By the time Mrs. Farr returned to work in mid-October of 2014, it was nearly peak season for Amazon, and an extremely busy time for human resources, when the Company hires thousands of seasonal workers to deal with the increase in holiday sales.

37.     Toward the end of peak season, Ms. Rolfes took an incident in which Mrs. Farr had done absolutely nothing wrong; then she twisted the facts of that incident to trump up a purportedly legitimate reason to fire Mrs. Farr.  The reality, however, is that Amazon fired Mrs. Farr for violating a security policy, when it was beyond dispute that she committed no such violation.  The alleged incident took place on or about December 11, 2014, but Ms. Rolfes waited until peak season was over to fire Mrs. Farr.

38.     On or about December 30, 2014, Ms. Rolfes came to Mrs. Farr's desk on the warehouse floor and directed her to a meeting in Ms. Rolfes' office.   Once there, Ms. Rolfes proceeded to inform Mrs. Farr that she was being fired for violating a security policy, despite the fact that it was clear Mrs. Farr never violated the security policy.   Ms. Rolfes then abruptly escorted Mrs. Farr to her desk where she watched her gather her personal belongings, collected her keys and badge and, in front of a crowd of Mrs. Farr's co-workers, walked her out of the building.

39.     Mrs. Farr was 65 years old at the time Amazon fired her.   She had been with the company for nearly nine years and was one of the oldest and longest-tenured employees in Amazon's Northern Kentucky operations.

40.     On information and belief, Amazon replaced Mrs. Farr with a substantially younger, non-disabled person.

## COUNT I

### (Failure to Pay Wages for Hours Worked in Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*)

41.     Mrs. Farr realleges the foregoing paragraphs as if fully rewritten herein.

42.     Amazon is an employer covered by the FLSA.

43.     Amazon had a policy and practice of knowingly having employees work "off the clock" and not compensating them for that time.

44.     Mrs. Farr worked hours "off the clock" for which Amazon did not compensate her in violation of the FLSA.

45.     Amazon's failure to compensate Mrs. Farr for working off the clock hours was willful.

46.     In addition to unpaid wages from Amazon's willful violation of the Fair Labor Standards Act, Mrs. Farr is entitled to liquidated damages as set forth in 29 U.S.C. § 216.

47.     Mrs. Farr has been required to file this action as a result of Amazon's willful failure to pay her overtime in accordance with the Fair Labor Standards Act and, as such, is entitled to attorneys' fees and costs incurred in accordance with 29 U.S.C. § 216.

## COUNT II

**(Failure to Pay Overtime Wages for Overtime Hours Worked
in Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*)**

48.     Mrs. Farr realleges the foregoing paragraphs as if fully rewritten herein.

49.     Amazon is an employer covered by the FLSA.

50.     Amazon had a policy and practice of not compensating employees at a time and a half rate for the overtime hours that they worked "off the clock" while at working at home and working through lunch breaks.

51.     Based on this policy and practice, Amazon did not properly include all of the hours that Mrs. Farr worked toward the total number of hours for which she was compensated during a given week.  As a result, Amazon failed to properly compensate Mrs. Farr for all of the hours that she worked in excess of forty per week at one-and-a-half times her regular rate of pay.

52.     Amazon's failure to properly compensate Mrs. Farr for overtime hours worked was willful.

53.     In addition to unpaid overtime wages from Amazon's willful violation of the Fair Labor Standards Act, Mrs. Farr is entitled to liquidated damages as set forth in 29 U.S.C. § 216.

54.     Mrs. Farr has been required to file this action as a result of Amazon's willful failure to pay her overtime in accordance with the Fair Labor Standards Act and, as such, is entitled to attorneys' fees and costs incurred in accordance with 29 U.S.C. § 216.

## COUNT III

**(Failure to Maintain Accurate Records in Violation of the
Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, against all Defendants)**

55.     Mrs. Farr realleges the foregoing paragraphs as if fully rewritten herein.

56.     Pursuant to 29 U.S.C. § 211(c), and the Fair Labor Standards Act Recordkeeping Regulations, 29 C.F.R. 516, Amazon is required to maintain records reflecting the hours worked each day by all non-exempt employees.

57.     Amazon failed to maintain accurate records of all hours worked by Mrs. Farr.

58.     By failing to maintain accurate records of hours worked by Mrs. Farr, Amazon willfully, knowingly and recklessly violated the provisions of the Fair Labor Standards Act requiring maintenance of detailed records.

59.     As a result of Amazon's failure to maintain accurate records of all hours worked by non-exempt employees, Mrs. Farr has been damaged in that she has not been compensated for all of the hours that she worked, as required by the Fair Labor Standards Act.

## COUNT IV

**(Failure to Pay Wages for Hours Worked in Violation of the
Kentucky Revised Statutes §§ 337.010 *et seq.*)**

60.     Mrs. Farr realleges the foregoing paragraphs as if fully rewritten herein.

61.     Amazon is an employer covered by the Kentucky Wage Statutes, specifically Section 337.010(1)(d).

62.     Amazon had a policy and practice of knowingly having employees work "off the clock" and not compensating them for that time.

63.     Mrs. Farr worked hours "off the clock" for which Amazon did not compensate her in violation of the Kentucky Wage Statutes.

64.     Amazon's failure to compensate Mrs. Farr for working off the clock hours was willful.

11

65.     In addition to unpaid wages from Amazon's willful violation of the Kentucky Wage Statutes, Mrs. Farr is entitled to liquidated damages as set forth in K.R.S. § 337.385.

66.     Mrs. Farr has been required to file this action as a result of Amazon's willful failure to pay her overtime in accordance with the Kentucky Wage Statutes and, as such, is entitled to attorneys' fees and costs incurred in accordance with K.R.S. § 337.385.

## COUNT V

**(Failure to Pay Overtime Wages for Overtime Hours Worked
in Violation of the Kentucky Revised Statutes §§ 337.010 *et seq.*)**

67.     Mrs. Farr realleges the foregoing paragraphs as if fully rewritten herein.

68.     Amazon is an employer covered by the Kentucky Wage Statutes, specifically Section 337.010(1)(d).

69.     Amazon had a policy and practice of not compensating employees at a time and a half rate for the overtime hours that they worked "off the clock" while at working at home and working through lunch breaks.

70.     Based on this policy and practice, Amazon did not properly include all of the hours that Mrs. Farr worked toward the total number of hours for which she was compensated during a given week.  As a result, Amazon failed to properly compensate Mrs. Farr for all of the hours that she worked in excess of forty per week at one-and-a-half times her regular rate of pay.

71.     Amazon's failure to properly compensate Mrs. Farr for overtime hours worked was willful.

72.     Amazon's conduct was in violation of K.R.S. § 337.285.

73.     In addition to unpaid overtime wages from Amazon's willful violation of the Kentucky Wage Statutes, Mrs. Farr is entitled to liquidated damages as set forth in K.R.S. § 337.385.

74.     Mrs. Farr has been required to file this action as a result of Amazon's willful failure to pay her overtime in accordance with the Fair Labor Standards Act and, as such, is entitled to attorneys' fees and costs incurred in accordance with K.R.S. § 337.385.

**COUNT VI**

**(Violation of K.R.S. § 337.355)**

75.     Mrs. Farr re-alleges the foregoing paragraphs as if fully rewritten herein.

76.     K.R.S. § 337.355 requires employers to grant employees a reasonable period for lunch as close to the middle of the employee's scheduled work shift as possible, but in no case no sooner than three hours after her work shift commences, nor more than five hours from the time her work shift commences.

77.     Amazon maintained working conditions that prevented Mrs. Farr from taking lunch breaks in accordance with K.R.S. § 337.355.

78.     Throughout her employment with Amazon as an HRA, Mrs. Farr frequently worked an entire shift, plus overtime, without being able to take any lunch break.

79.     As a direct and proximate result of the above-described conduct, Mrs. Farr has suffered injury and damages for which she is entitled to compensation in an amount to be proven at trial.

**COUNT VII**

**(Violation of K.R.S. § 337.365)**

80.     Mrs. Farr re-alleges the foregoing paragraphs as if fully rewritten herein.

81.     K.R.S. § 337.365 requires employers to afford employees rest periods of at least ten minutes during each four hours worked (in addition to regularly scheduled lunch periods).

82.     Amazon maintained working conditions that prevented Mrs. Farr from taking rest periods in accordance with K.R.S. § 337.365.

83.     Throughout her employment with Amazon, Mrs. Farr frequently worked more than four hours, and on most days entire shifts, without being afforded the benefit of any rest periods.

84.     As a direct and proximate result of the above-described conduct, Mrs. Farr has suffered injury and damages for which she is entitled to compensation in an amount to be proven at trial.

### COUNT VIII

### (FMLA Violation and Retaliation)

85.     Mrs. Farr realleges the foregoing paragraphs as if fully rewritten herein.

86.     Mrs. Farr suffered from serious health conditions as defined by the FMLA, 29 U.S.C. § 2611.

87.     On three separate occasions in the months leading up to her termination, Mrs. Farr required FMLA leave to deal with serious health conditions.

88.     Amazon interfered with Mrs. Farr's ability to exercise her rights under the FMLA in violation of the FMLA.

89.     Amazon terminated Mrs. Farr's employment in retaliation for exercising her rights under the FMLA.

90.     Amazon's acts of interfering with and retaliating against Mrs. Farr's FMLA protected rights include, but are not limited to, placing her on a less desirable night shift without a legitimate business reason to do so, and by terminating her employment  because she exercised her right to medical leave.

91.     Amazon's actions constitute willful violations of the FMLA, 29 U.S.C. § 2601 et seq.

92.     As a result of Defendant's willful violation of the FMLA, Mrs. Farr has suffered damages and is entitled to relief.

## COUNT IX

### (Disability Discrimination in Violation of K.R.S. Chapter 344)

93.     Mrs. Farr alleges all of the foregoing paragraphs as if fully rewritten herein.

94.     At all relevant times, Mrs. Farr had disabilities, and/or was perceived by Amazon as being disabled.

95.     Mrs. Farr was fully qualified for all positions that she held for Amazon.

96.     Amazon unlawfully removed Mrs. Farr from a shift, and later terminated her employment based upon her disabilities and/or perceived disabilities in violation of Chapter 344 of the Kentucky Revised Statues.

97.     Amazon also refused failed to grant reasonable accommodations for Mrs. Farr's disability, despite her requests for such accommodations and her physician's requirement that she receive them.

98.     On information and belief, Amazon replaced Mrs. Farr with a non-disabled employee.

99.     Amazon's conduct was intentional, willful, wanton and malicious in nature.

100.    As a direct and proximate result of Amazon's conduct as set forth above, Mrs. Farr has suffered injury and damages for which she is entitled to recovery under K.R.S. Chapter 344.

## COUNT X

### (Age Discrimination in Violation of K.R.S. Chapter 344)

101.    Mrs. Farr realleges the foregoing paragraphs as if fully rewritten herein.

102.    Mrs. Farr was 65 years old when Amazon fired her.

103.    Amazon was aware of Mrs. Farr's age at the time it fired her.

104.    On information and belief, Amazon replaced Mrs. Farr substantially younger employee.

105.    Amazon's actions were willful, wanton, malicious, and/or in reckless disregard of Mrs. Farr's rights.

106.    As a direct and proximate result of Amazon's unlawful discriminatory conduct, Mrs. Farr has been injured and is entitled to recovery.

**WHEREFORE**, Plaintiff Christy Farr demands judgment, jointly and severally, against Defendants AMAZON.COM.KYDC INC., AMAZON.COM.KYDC LLC and AMAZON.COM, LLC as follows:

(a) That Defendants be enjoined from further unlawful conduct as described in the Complaint;

(b) That Plaintiff be reinstated;

(c) That Plaintiff be awarded compensatory damages including emotional distress damages;

(d) That Plaintiff be awarded all lost pay and benefits, including all lost stock grants and other equity-based compensation;

(e) That Plaintiff be awarded punitive damages;

(f)  That Plaintiff be awarded all unpaid wages for hours and overtime hours worked;

(g) That Plaintiff be awarded liquidated damages;

(g) That Plaintiff be awarded pre-judgment interest;

(h) That Plaintiff be awarded reasonable attorneys' fees; and

(i) That Plaintiff be awarded all other legal and equitable relief to which she may be entitled.

16

## JURY DEMAND

Plaintiff Christy Farr hereby demands a trial by jury on all issues so triable.


Respectfully submitted,


/s/ Robert A. McMahon
Robert A. McMahon (87811)
Eberly McMahon Copetas LLC
2321 Kemper Lane, Suite 100
Cincinnati, Ohio 45206
(513) 533-9898
(513) 533-3554 – fax
bmcmahon@emclawyers.com

Attorneys for Plaintiff Christy Farr


Of counsel:

Theodore C. Copetas
David A. Eberly
Eberly McMahon Copetas LLC
2321 Kemper Lane, Suite 100
Cincinnati, Ohio 45206
tcopetas@emclawyers.com
deberly@emclawyers.com
(513) 533-9898